Opinion filed June 26, 2008











 
 
  
 
 







 
 
  
 
 




Opinion filed June 26,
2008

 

 

 

 

 

 

                                                                        In The

                                                                              

    Eleventh
Court of Appeals

                                                                 ____________

 

                                                          No. 11-07-00196-CV 

                                                     __________

 

                MEMORIAL
PARK MEDICAL CENTER, INC., Appellant

 

                                                             V.

 

                     RIVER
BEND DEVELOPMENT GROUP, L.P. AND 

                                            TIBRO,
INC., Appellees

 



 

                                          On
Appeal from the 35th District Court

 

                                                          Brown
County, Texas

 

                                             Trial
Court Cause No. CV-05-11-522

 



 

                                                                   O
P I N I O N

 








River
Bend Development Group, L.P. brought this trespass to try title case against
Memorial Park Medical Center, Inc. to remove a cloud on River Bend=s title to twenty-two
acres.  River Bend traces its title to Lawrence Pruett, who sold the land to
George Day.  Day failed to pay school taxes on the land and failed to pay
Pruett.  After the tax judgment was entered against Day=s company but before the actual tax sale, the
Pruetts foreclosed on their deed of trust from Day.  When the sheriff sold the
land at the tax sale to Bill Williams, the land was owned by the Pruetts, who
had not been parties to the tax suit.  Memorial Park claims ownership to the
same land based on the sale to Bill Williams.  Because Williams obtained his money
back on the ground that the tax sale was void, we affirm the summary judgment
in favor of River Bend.[1]

                                                               Background
Facts

In
April 1978, Lawrence Pruett and his wife sold twenty-two acres to George Day,
taking a promissory note and deed of trust from Day.  Day transferred the land
to G.D.W., Inc.  In February 1989, Brownwood Independent School District (BISD)
filed suit in Cause No. T-1710 for taxes against G.D.W., Inc.  Judgment for
BISD was entered on June 22, 1989.  The Pruetts, who held a recorded deed of
trust lien, were not made parties to the BISD suit nor were they served with
citation.  On September 5, 1989, the trustee foreclosed the deed of trust and
conveyed the property to Lawrence Pruett by a deed that was recorded on
December 14, 1989.

Bill
Williams purchased the property at the tax sale.  The sheriff=s deed was dated January 15,
1990, and was recorded January 25, 1990.  On March 3, 1992, Williams filed an
application in Cause No. T-1710 to withdraw the funds that were in the registry
of the court on the ground that the sheriff=s
deed was void.  Williams=s
application stated that the sheriff=s
deed was void because the Pruetts had not been made parties to the BISD suit. 
In its order dated April 14, 1992, the court that had ordered the tax sale
granted Williams the relief he requested.  The order incorporated a letter from
the attorney for BISD.  The letter stated that BISD had no objection to
Williams=s claim for
the excess proceeds and recommended that the order reflect that Williams had a
right of subrogation as to the taxes and costs he had paid on the Pruetts= behalf.  The taxes had
amounted to $31.29.  Because the twenty-two acres were just one of a number of
properties listed in the judgment granted to BISD against G.D.W., Inc., it is
impossible to tell from the record how much the costs were; however, the record
indicates that they were minimal.  








Williams
had paid $730 for the property at the sheriff=s
sale, and he received $916.46 from the registry of the court under the order. 
Consistent with the relief granted to him, Williams did not pay any taxes on
the property after 1991.    However, in 2004, Williams gave a quitclaim deed to
the property to William W. Ruth, president of Memorial Park; and Ruth then
deeded the land to Memorial Park.

Tracing
its title to the Pruetts, River Bend brought this trespass to try title cause
of action.  River Bend moved for summary judgment based on its title and on the
ground that Williams had in effect been granted rescission of the tax deed to
him because the deed was void.  The trial court implicitly held that the
sheriff=s deed had
been found void by the 1992 order, declared the deed void, and granted River
Bend=s motion for
summary judgment.

Issues
on Appeal

In
the first four issues, Memorial Park claims that the trial court erred in
granting summary judgment to River Bend because River Bend failed to establish
as a matter of law that Williams repudiated his interest in the property, that
Lawrence Pruett did not receive notice of the tax sale, that River Bend=s challenge of the sheriff=s deed to Williams was not
time-barred under Tex. Tax Code Ann. '
34.08 (Vernon 2008) and former Tex. Tax
Code ' 33.54 (1979),
and that River Bend had satisfied the required conditions precedent to bringing
its action under Section 34.08(a) before challenging the tax sale to Williams. 
In the fifth issue, Memorial Park contends that it has a superior claim through
adverse possession.  In the sixth issue, Memorial Park claims that the trial
court erred in striking its claims against TIBRO, Inc., a predecessor in title
to River Bend.  In the seventh and eighth issues, Memorial Park claims that the
trial court erred in its evidentiary rulings.

Standard
of Review

The
standards of review for traditional summary judgment proceedings are well
established and well defined.  Am. Tobacco Co. v. Grinnell, 951 S.W.2d
420, 425 (Tex. 1997); Lear Siegler, Inc. v. Perez, 819 S.W.2d 470,
471 (Tex. 1991); Nixon v. Mr. Prop. Mgmt. Co., 690 S.W.2d 546, 548-49
(Tex. 1985).  

Williams=s Application to Withdraw
Funds

Memorial
Park has attempted to characterize River Bend=s
trespass to try title suit as an attack on the earlier tax judgment and sale to
Williams.  Based on that characterization of River Bend=s suit, Memorial Park argues that River Bend
failed to satisfy the conditions precedent to bringing its action under Section
34.08 of the Texas Tax Code and that River Bend=s
action is barred by the limitations provisions of Section 34.08 and former
Section 33.54.  








We
disagree with Memorial Park=s
characterization of River Bend=s
trespass to try title action.  It was not an attack on the tax judgment and
sale to Williams.  Because River Bend was not challenging the validity of the
tax sale to Williams, River Bend was not required to comply with the
requirements of Section 34.08 before commencing its trespass to try title
action.[2]  River Bend=s trespass to try title
action was based on its own title, but River Bend had to explain why Williams
had no title or color of title after the order in 1992 to show that Memorial
Park could not base its title on the tax sale.

Williams
in effect asked for rescission of the sheriff=s
deed to him on the ground that the tax sale was void.  Williams could not have
been more explicit in his application to withdraw funds filed in Cause No.
T-1710:

By
sheriff=s deed dated
January 15, 1990, a copy of which is incorporated herein as Exhibit AA@, a 22.00 acre tract of land was purportedly
sold in satisfaction of unpaid taxes due and owing in this Cause.

 

By
Substitute Trustee=s
deed dated September 5, 1989, of record in Volume 1043, Page 534, Real Property
Records of Brown County, Texas, title to the aforementioned property passed to
Lawrence L. Pruett, the said Lawrence L. Pruett having been a first lien holder
[sic] by virtue of a Deed of Trust dated April 14, 1978, executed by G.A. Day
in favor of Lawrence L. Pruett and wife, Lucile B. Pruett, said Deed of Trust
being of record in Volume 198, Page 254 of the Deed of Trust Records of Brown
County, Texas.

 

That
the said Lawrence L. Pruett and wife, Lucile B. Pruett, were not made parties
to this Cause, in the manner required by law so that this Cause would be
binding upon them.

 

That
January 15, 1990, at the time of the tax sale, Lawrence L. Pruett was the
record owner of the property, and as such the tax sale could only have passed
title to the interest of the Defendant in the lawsuit, G.D.W., Inc., which at
said time the said G.D.W., Inc., had no interest in the property because of the
earlier foreclosure under the terms of the Deed of Trust.

 








The
said BILL WILLIAMS bid for the property at the Sheriff=s Sale conducted on December 5, 1989, the sum
of $730.00, and of this amount, all delinquent taxes owing against said
property were paid, with the balance being held in the Registry of the Court. 
At this time, there is in the Registry of the Court the sum of $903.31, which
includes interest accrued thereon.

 

The
said BILL WILLIAMS bid for the property at the tax sale in good faith, and in
reality acquired nothing, and is entitled at law and in equity to a return of
the monies held in the Registry of the Court.

 

WHEREFORE,
PREMISES CONSIDERED, the said BILL WILLIAMS prays that all of the funds held in
the Registry of the Court be returned to him.

 

Williams
was correct that the sheriff=s
deed was void for the reason given.  State Mortgage Corp. v. Traylor, 36
S.W.2d 440, 443 (Tex. 1931).  The supreme court viewed such a deed as void in Anderson
v. Collum, 514 S.W.2d 230 (Tex. 1974).  See Ditmore Land & Cattle
Co. v. Hicks, 290 S.W.2d 499 (Tex. 1956); and Mumme v. McCloskey, 66
S.W. 853 (Tex. Civ. App. 1902, writ ref=d). 
Because the foreclosure judgment and the sheriff=s
deed did not appear void on their face,  it is more accurate to say that the
sheriff=s deed was
voidable.  Davis v. Howe, 213 S.W. 609 (Tex. Comm=n App. 1919, judgm=t adopted).  Whether the tax deed was void or
voidable, a lienholder must be joined in a delinquent tax suit in order to be
bound by it.  Murphee Prop. Holdings, Ltd. v. Sunbelt Savs. Ass=n of Tex., 817 S.W.2d
850 (Tex. App.CHouston
[1st Dist.] 1991, no writ).  Moreover, the Tax Code provided that the sheriff=s deed conveyed only
G.D.W., Inc.=s
interest in the twenty-two acres; at that time, the Pruetts were the record
owners, and G.D.W., Inc. had no interest.  At that time, former Section
34.01(d) (now Section 34.01(n))[3] provided that
a sheriff=s deed
conveyed only Athe
interest owned by the defendant@
in the tax suit.  Williams correctly recognized in his application that the tax
sale could only pass the interest of G.D.W., Inc. and that G.D.W., Inc. did not
have an interest in the property at the time of the sheriff=s deed. 

The
next question is whether the district court erred in giving Williams his money
back.  Memorial Park has argued that the district court=s order was a judicial error.  We disagree.








In
1992, a purchaser at a void or defective tax sale had two options to get his
money back.  The purchaser could seek the funds (in excess of taxes paid) under
former Tex. Tax Code ' 34.04 (1983) or the
purchaser could file a separate suit against the taxing authority under former Tex. Tax Code ' 34.07 (1979).  Former Section 34.07 was
titled ASubrogation of
Purchaser at Void Sale@
and provided in part:

(a)
The purchaser at a void or defective tax sale is subrogated to the rights of
the taxing unit in whose behalf the property was sold to the same extent a
purchaser at a void or defective sale conducted in behalf of a judgment
creditor is subrogated to the rights of the judgment creditor.

 

(b)
Except as provided by Subsection (c) of this section, the purchaser at a void
or defective tax sale is subrogated to the tax lien of the taxing unit in whose
behalf the property was sold to the same extent a purchaser at a void or
defective mortgage or other lien foreclosure sale is subrogated to the lien of
the lienholder, and the purchaser is entitled to a reforeclosure of the lien to
which he is subrogated.

 

(d)
In lieu of pursuing the rights to which he is subrogated, a purchaser at a void
tax sale may elect to file an action against the taxing units to which the
proceeds of the sale were distributed to recover the amount paid at the sale. 
A purchaser who files a suit authorized by this subsection waives all rights to
which he would otherwise be subrogated.

 

In
view of the modest amount of taxes that were due on the twenty-two acres, it is
not surprising that Williams chose not to file a separate action against BISD
and, instead, filed his application to recover proceeds under former Section
34.04 that provided:

(a)
A person may file a petition in the court that ordered the sale setting forth a
claim to the excess proceeds within seven years from the date of the sale of
the property.[4]

 

Williams filed
his claim within three years of the purported sale to him.  But for former
Section 34.04, the district court in Cause No. T-1710 would have lost
jurisdiction by then.  The attorney for BISD, in agreeing to Williams=s application, stated that
Williams was subrogated to BISD=s
right to the taxes and costs Williams had paid and thereby recognized that
Williams could bring an action against the Pruetts to recover those amounts. 
The district court agreed and incorporated BISD=s
attorney=s letter as
part of its order.








Memorial
Park argues that the 1992 order did not set aside the sheriff=s deed as void.  Although
the order did not expressly state that the deed was void, the only basis for
Williams receiving his money back was an implicit finding by the district court
that the sheriff=s
deed to Williams was void.  As River Bend has pointed out, a purchaser at a
valid tax sale had no statutory basis to recover excess proceeds; that appears
to still be true.  The right to recover excess proceeds arises only by statute. 
See Op. Tex. Att=y
Gen. No. V-902 (1949).  In 1992, only a purchaser at a void or defective tax
sale had a statutory basis for recovering proceeds; again, that is still true
today.  Former Section 34.07(d) gave Williams the right to get his money back.

Memorial
Park has attempted to create a fact question to defeat River Bend=s motion for summary
judgment by providing an affidavit from Williams that he did not repudiate the
sheriff=s deed. 
Williams=s affidavit
presents merely a Asham@ fact issue.  See Pando
v. Sw. Convenience Stores, L.L.C., 242 S.W.3d 76, 79 (Tex. App.CEastland 2007, no pet.). 
Williams may not contradict his statements in his application to recover
proceeds.  The district court granted him the relief that he requested on the
ground that the sheriff=s
deed was void.








Memorial
Park=s reliance on John
K. Harrison Holdings, L.L.C. v. Strauss, 221 S.W.3d 785 (Tex. App.CBeaumont 2007, pet.
denied), is misplaced because Harrison Holdings involved a challenge by
Harrison to the tax foreclosure sale.  River Bend has not challenged the tax
sale to Williams; it is relying on the subsequent order.  Harrison was in the
position of River Bend in this case.  However, in Harrison Holdings, the
purchaser at the tax sale who sold it to Strauss had not taken any action to
have the tax sale deed declared void to obtain his money back.  Harrison argued
that the tax judgment and sale to Strauss=s
predecessor (the tax sale purchaser) was void because Aknown and/or record owners of the property at
the time were not made parties to the tax suit or notified of the sale.@  221 S.W.3d at 787.  Harrison
asked the court to hold that the limitations provisions relating to tax sales
were either unconstitutional or did not apply to a void tax deed.  The Harrison
Holdings court held that the limitations defense under Sections 34.08(b)
and 33.54 of the Texas Tax Code was constitutional and that Strauss could rely
on that defense despite the failure to join record owners in the tax suit.  At
the time the suit in Harrison Holdings was commenced,  Section 33.54[5]
provided that an action relating to the title to property could not be
maintained against the purchaser of the property at a tax sale unless the
action was commenced before the first anniversary of the date that the deed executed
to the purchaser at the tax sale was filed of record.  In contrast, when
Williams commenced his claim to recover the funds in 1992, former
Section 33.54 allowed three years to bring an action to set aside the deed
to Williams as void.  Because Williams in effect had the deed declared void
shortly after two years, the Pruetts were not required to duplicate his effort
before the three-year period ended.  After the 1992 order, Williams had no
color of title or interest in the property; therefore, former Section 33.54 has
no application to this case.  

Jordan
v. Bustamante, 158 S.W.3d 29 (Tex. App.CHouston
[14th Dist.] 2005, pet. denied), and Loper v. Meshaw Lumber Co., 104
S.W.2d 597 (Tex. Civ. App.CEastland
1937, writ dism=d),
are also inapposite.  In Jordan, the taxing authority sued the Jordans
for taxes and obtained foreclosure judgments on two parcels of land. 
Bustamante relied on the tax sales for his title.  The Jordans argued that the
tax sales were void because two lienholders, the State and the IRS, were not
joined in the foreclosure suit.  The court held (1) that the Jordans had no
standing to complain about the failure to join the State and the IRS because
that did not affect them and (2) that the foreclosure judgment was valid as to
them because the Jordans were parties to the tax suit.  Standing is not an
issue in this case because River Bend is not trying to set aside the original
tax judgment against G.D.W., Inc. and the subsequent sheriff=s deed.  Williams
accomplished the nullification of the sheriff=s
deed by his application to recover funds in Cause No. T-1710 and the court=s order dated April 14,
1992.

In
Loper v. Meshaw Lumber Co., Loper challenged the earlier tax sale
judgment, contending that the judgment in the tax sale was void.  Rejecting his
claim, the court held that he could not collaterally attack the judgment
because the judgment Arecite[d]
due and legal service.@ 
Loper, 104 S.W.2d at 599.  Even though a Mrs. Irene Howard was not made
a party to the tax suit, the court held that the judgment foreclosing the tax
lien was good against the parties joined in the suit and that Aparties not joined [were]
not bound by any such judgment.@ 
Id. at 599-600.  Again, it was not the tax sale purchaser in Loper
who complained about the tax sale as Williams did in the present case.








Because
Williams obtained the relief he sought by the order, River Bend did not have to
challenge the tax sale.  Thus, River Bend was not required to satisfy the
conditions precedent to filing a challenge found in Section 34.08(a).  River
Bend also was not required to show that the Pruetts did not receive notice of
the tax sale.  The limitations provisions of Section 34.08 and former Section
33.54 were not applicable under the unique facts of this case.  Memorial Park=s first four issues are
overruled.

Memorial
Park=s Claim of
Adverse Possession

In
its fifth issue, as an alternative claim, Memorial Park asserts that it
established that it has a superior claim to the property through adverse
possession under Tex. Civ. Prac. &
Rem. Code Ann. ''
16.024-.026 (Vernon 2002).  Memorial Park also argues that it at least
demonstrated with uncontroverted summary judgment evidence that a fact issue
exists regarding its claim to the property by adverse possession.

The
three-year statute of limitations required Memorial Park to prove that it or
its predecessors held the property Ain
peaceable and adverse possession under title or color of title@ for the three years. 
Section 16.024; Rogers v. Ricane Enters., Inc., 772 S.W.2d 76, 80-81
(Tex. 1989).  The order voided the sheriff=s
deed to Williams; therefore, no title passed to him.  And where a sheriff=s tax deed has been shown
to be void, that void deed cannot be considered Acolor
of title.@  Telfener
v. Dillard, 7 S.W. 847, 852 (Tex. 1888); Reynolds v. Farmers
& Merchants Nat=l
Bank of Nocona, 135 S.W.2d 556, 557 (Tex. Civ. App.CFort Worth 1939, no writ); see also Watts
v. Bruce, 72 S.W. 258 (Tex. Civ. App. 1903, writ ref=d) (between the date of the judgments against
him and the levy and sale by the sheriff, the husband deeded the land to his wife;
therefore, the sheriff=s
deed passed no title and was not Acolor
of title@ for the
three-year statute).  Memorial Park has not shown that it or its predecessors
held the property by adverse possession under color of title.








Section
16.025, the five-year statute of limitations, requires that the person relying
on the statute claim the property under a duly registered deed.  The object of
the requirement of a duly registered deed is Ato
define the boundaries of the claim and give notice to the true owner of such
adverse claim.@  Davis,
213 S.W. at 610.  The purchaser at the tax sale in Davis was a deputy
sheriff who bought the land on behalf of F.J. Brown; the deputy sheriff
subsequently conveyed the land to Brown by quitclaim deed.  Although a statute
declared that the sale to the deputy sheriff was void, the supreme court held
that the sale was Avoidable.@  Id. at 610.  Based
on the statute, the holders of record title could have voided the tax sale
unless their right was barred by the five-year statute of limitations.  The
supreme court held that it was immaterial that the deed conveyed no title
because the deed gave notice to the true owner of an adverse claim to the
land.  It should be noted, however, that in Davis, the sheriff=s deed purported to convey
the interest of the true owner; thus, the court reasoned that it gave notice
even though the statute prohibited sales to officers conducting the tax sale.  See
Porter v. Wilson, 389 S.W.2d 650 (Tex. 1965).

Normally,
a quitclaim deed will not constitute a duly registered deed under Section
16.025.  Johnson v. McClintock, 202 S.W.3d 821, 823 (Tex. App.CCorpus Christi 2006, no
pet.) (relying on Porter, 389 S.W.2d at 654, and Rogers v. Ricane
Enters., Inc., 884 S.W.2d 763, 769 (Tex. 1994)).  However, the supreme
court in Porter recognized an exception where a sheriff=s deed in a tax sale
purports to convey the interest of the true owner of the property; in that
situation, the sheriff=s
deed qualifies as notice to the true owner under the five-year statute.  In
this case, the Porter exception does not apply.  The sheriff=s deed to Williams could
not have served as a duly registered deed under Section 16.025 because the deed
purported to pass the interest of G.D.W., Inc., not the Pruetts= interest.  Because Williams
obtained the order, the sheriff=s
deed to him was rendered a nullity, and it is even more evident that the
sheriff=s deed could
not serve as notice to the Pruetts that Williams was making an adverse claim. 
In his application, Williams gave notice that he recognized the Pruetts= title.

Another
requirement of Section 16.025 is that the person claiming adverse possession
has paid the Aapplicable
taxes on the property.@ 
Section 16.025(a)(2).  This has been interpreted to mean that taxes were paid
continuously on the property for five years.  Pierce v. Gillespie, 761
S.W.2d 390 (Tex. App.CCorpus
Christi 1988, no pet.).  Or, as one court put it, the person claiming adverse
possession under the five-year statute had to Amake
the consecutive payment of taxes required.@ 
Schoellkopf Co. v. Starr, 88 S.W.2d 564, 566 (Tex. Civ. App.CGalveston 1935), aff=d, 113 S.W.2d 1227
(Tex. 1938).  A partial payment of the taxes under this statute will not meet
the requirement.  Wichita Valley Ry. Co. v. Somerville, 179 S.W. 671
(Tex. Civ. App.C
Amarillo 1915, no writ).








Memorial
Park also relies on Section 16.026, the ten-year statute of limitations. 
Section 16.026(a) provides as follows: AA
person must bring suit not later than 10 years after the day the cause of
action accrues to recover real property held in peaceable and adverse
possession by another who cultivates, uses, or enjoys the property.@  One essential element of
adverse possession under the ten-year limitations statute is that the claimant=s possession must be an
actual and visible appropriation of the land for ten or more consecutive
years.  Tex. Civ. Prac. & Rem. Code
Ann. '' 16.021, 16.026 (Vernon 2002); Rhodes v. Cahill, 802
S.W.2d 643, 645 (Tex. 1990).

Williams=s acknowledgment of the
Pruetts= title in his
application requires us to examine Memorial Park=s
summary judgment evidence to determine if later Williams provided actual or
constructive notice to the Pruetts that he had decided to assert a hostile
claim to their property.  See Butler v. Hanson, 455 S.W.2d 942, 946
(Tex. 1970) (possession was not adverse when claimant signed an affidavit
disclaiming an interest in the record owner=s
land).  We note that Williams paid no taxes on the property after the order
gave him his money back.  Memorial Park was required to provide facts to show
that it or its predecessors=
use of the property constituted an actual and visible appropriation of the
property during the entire ten-year period.  See Terrill v. Tuckness,
985 S.W.2d 97, 109 (Tex. App.CSan
Antonio 1998, no pet.); Parker v. McGinnes, 842 S.W.2d 357, 360
(Tex. App.CHouston
[1st Dist.] 1992, pet. denied).  Memorial Park=s
evidence consisted of affidavits of Ruth, Williams, and Hilton Wise.

Wise
only states in his affidavit that in the early to mid-1990s, on more than one
occasion, Williams or his relatives told Wise that Williams had bought the
twenty-two acres and that Williams did not want Wise grazing his cattle on that
property because Williams was using the property to grow hay.  Ruth states in
his affidavit that he contacted Lawrence Pruett who said that he thought he had
lost the property due to the sheriff=s
sale and Athat he was
very angry with George Day for having never paid him on the 1978 Property Sale.@[6] 
The problem, however, is the lack of factual evidence of Williams=s, Ruth=s, or Memorial Park=s actual and visible
appropriation of the land for ten or more consecutive years.  Ruth states in
his affidavit:








At all times from September 15, 2004[,] since purchasing the
property to December 6, 2004[,] when I sold the Property to [Memorial Park], I
used, enjoyed and exercised dominion and control over the property, and held
myself out to third parties as the exclusive owner of the Property.  My
possession of the property during that time period was actual, visible,
continuous, notorious, distinct, hostile, and of such a character as to
indicate unmistakable an assertion of a claim of exclusive ownership.

Ruth then makes
a similar statement on behalf of Memorial Park.

Williams=s statement in his
affidavit was similar to those made by Ruth:

At
all times from December 5, 1989, when I first purchased the Property, until
September 15, 2004, when I sold and conveyed the Property to William W. Ruth, I
used, enjoyed and exercised dominion and control over the property, and held
myself out to third parties as the exclusive owner of the Property, and would
not have sold the Property to William Ruth had I not believed that I had
rightful ownership of the Property.  My possession of the property during that
time period was actual, visible, continuous, notorious, distinct, hostile, and
of such a character as to indicate unmistakably an assertion of a claim of
exclusive ownership.  More than once during that period of time, I told people
who I thought were trespassing or who otherwise had no interest in or right to
be on the Property to keep off the Property, including, any livestock owned by
member(s) of the Wise family who had taken a lease on the an [sic] adjacent
piece of property.

 

These
affidavits do not set forth statements of fact to support the legal conclusions
asserted.  To be competent summary judgment evidence, an affidavit must be based
on personal knowledge, set forth facts admissible in evidence, and
affirmatively show the affiant=s
competency to testify as to the matters stated therein.  Tex. R. Civ. P. 166a(f).  Unsupported
conclusory statements are not credible and are not susceptible to being readily
controverted and, as a result, are not proper summary judgment evidence.  Warren
v. Warren Equip. Co., 189 S.W.3d 324, 332-33 (Tex. App.C Eastland 2006, no pet.); Rizkallah
v. Conner, 952 S.W.2d 580, 587 (Tex. App.CHouston
[1st Dist.] 1997, no writ).  Memorial Park did not provide summary judgment
evidence that raised a fact issue on each element of its affirmative defense of
limitations.  Memorial Park=s
fifth issue is overruled.

The
Claims Against TIBRO








Memorial
Park asserted third-party claims against George A. Day, TIBRO, and other
third-party defendants.  Day was the person who originally purchased the
property from Lawrence Pruett and his wife in 1978; the other third-party
defendants were entities allegedly owned or created by Day that appear in the
deed records as having claimed an interest in the property at various points in
time, culminating in a warranty deed dated March 25, 2003, to TIBRO.  There is
also a warranty deed dated February 8, 2005, from James and Lawrence Pruett to
TIBRO.  TIBRO then executed a warranty deed on May 13, 2005, to River Bend.  As
stated earlier, the trustee=s
deed to Lawrence  Pruett was recorded on December 14, 1989.

Memorial
Park claimed that the interests of Day and the Day entities in the property
were Awrongful,
illegal and fraudulent.@ 
TIBRO filed a motion to strike Memorial Park=s
third-party claims because Memorial Park failed to request and obtain leave
from the court before joining the additional third-party defendants as required
by Tex. R. Civ. P. 38(a).  The
trial court granted TIBRO=s
motion when it granted River Bend=s
motion for summary judgment.  Memorial Park, in its sixth issue, asserts that
the trial court erred in granting TIBRO=s
motion.

River
Bend=s cause of action
and Memorial Park=s
counterclaim (and third-party petition) were trespass to try title actions. 
Therefore, the third-party defendants named in Memorial Park=s third-party action were
not proper parties because they were neither persons in possession of the
property nor persons claiming title to the property.  Kennesaw Life &
Accident Ins. Co. v. Goss, 694 S.W.2d 115 (Tex. App.CHouston [14th Dist.] 1985, writ ref=d n.r.e.); see also Tex. R. Civ. P. 784, 785.  Memorial
Park had to rely on its own chain of title; that chain of title failed primarily
because of Williams=s
application and the 1992 order.  Memorial Park=s
sixth issue is overruled.

The
Evidentiary Rulings

In
its seventh and eighth issues, Memorial Park complains about the trial court=s consideration of an
affidavit by George Day because of his felony convictions.  Day simply stated
in his affidavit, dated February 1, 2007, that he leased the property to Wesley
Wise on November 1, 1985, for ranching purposes; that the lease was in
effect until November 1, 1991; that Wise continued to lease the property until
his death in October 1999; that the twenty-two acres are surrounded on three
sides by a larger eighty-seven-acre tract; and that there has never been a
fence around the twenty-two-acre tract.  Apparently TIBRO claimed that its
title to the property was based on limitations as well as the warranty deed in
2005 from James Pruett and Lawrence Pruett.








Because
River Bend=s chain of
title begins with Lawrence Pruett, and there is a warranty deed from him to
TIBRO, and then a deed from TIBRO to River Bend, the Day affidavit can be
ignored.  We note, however, that a convicted felon may be a competent witness. 
Parrish v. Brooks, 856 S.W.2d 522, 528 (Tex. App.CTexarkana 1993, writ denied).  Day=s felony conviction and
subsequent disbarment would go to his credibility, not to the admissibility of
the affidavit.  The trial court did not err in overruling Memorial Park=s motion to strike Day=s affidavit.  Memorial Park=s seventh and eighth issues
are overruled.

This
Court=s Ruling

The
judgment of the trial court is affirmed.

 

 

TERRY McCALL

JUSTICE

 

June 26, 2008

Panel consists of:  Wright, C.J.,

McCall, J., and Strange, J.









[1]The property in contention is legally described as
21.978 acres of land out of the W.H. Irion Survey No. 52, Abstract No. 537
in Brown County, and being all that certain twenty-two acre tract described in
Volume 1046, Page 601 of the Deed Records of Brown County, Texas.





[2]Section 34.08(a) provides that a person may not
commence an action that challenges the validity of a tax sale unless that
person first (1) deposits into the registry of the court an amount equal to the
amount of the delinquent taxes, penalties, and interest specified in the
judgment of foreclosure plus all costs of the tax sale or (2) files an
affidavit of inability to pay under Tex.
R. Civ. P. 145.





[3]Former Tex. Tax
Code ' 34.01(d) (1989).  The current Tex. Tax Code Ann. ' 34.01(n) (Vernon 2008) has the same provision.





[4]The current Section 34.04 requires that a tax sale
purchaser has to first have the tax sale declared void in an action against the
taxing units under the current Section 34.07(d) before the purchaser can file a
petition under Section 34.04.  And the petition under Section 34.04 must
be filed before the second anniversary of the date of the sale of the
property.  Section 34.04(a), (c)(1).





[5]Tex. Tax Code Ann. ' 33.54 (Vernon 2008).





[6]In its brief, Memorial Park states that Lawrence
Pruett is deceased.